UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DENNIS A. ORR, <br><br> Plaintiff, <br><br> v. <br><br> WARDEN PHILLIP VALDEZ, and KLINT STANDER, M.D.; <br><br> Defendants. | Case No. 1:10-CV-00034-EJL <br><br> **MEMORANDUM DECISION AND ORDER** |

Now pending is Defendants' motion for summary judgment. (Dkt. 40). Defendants argue that Plaintiff's claims cannot be factually supported and must be dismissed accordingly. *Memorandum in Support*, 7-12 (Dkt. 40-1). Also pending is Defendants motion to strike much of Plaintiff's supporting documentation as inadmissible hearsay and irrelevant. (Dkt. 58). Having thoroughly reviewed the record in this case, and otherwise being advised, the Court enters the following Order granting the motion to dismiss and granting in part and denying in part the motion to strike.

## Background

On December 17, 2010, the Court entered an Initial Review Order allowing Plaintiff to proceed with eight amendment medical claims against two named Defendants, Valdez and Stander. (Dkt. 19). Plaintiff claims that Defendant Philip Valdez, warden at

**MEMORANDUM DECISION AND ORDER - 1**

the Idaho Correctional Center (ICC), and Defendant Klint Stander, a doctor at ICC, have denied him adequate medical care solely for cost saving purposes in violation of the Eighth Amendment. *Amended Complaint* (Dkt. 17).

Plaintiff states that he has severe back pain due to degenerative disc disease and alleges that he has been denied effective treatment. Plaintiff finds it difficult to walk, sleep, or perform other basic life activities. He contends that several doctors have told him that he needs to have his knee replaced, but Stander informed him that CCA will not pay for it. Plaintiff further asserts that Stander has denied him effective pain medication, despite his repeated requests.

Plaintiff also has heart disease and states that the drugs that prison medical providers have used to treat this condition are not effective. According to Plaintiff, the ineffective medication required Plaintiff's heart to work too hard, increasing his blood pressure. Plaintiff now has an enlarged heart and is short of breath all of the time. He also has early kidney failure, poor hearing, and poor vision. He alleges that none of his physical ailments are being adequately treated, in violation of his right to be free from cruel and unusual punishment under the Eighth Amendment.

In his original complaint, Plaintiff also complained of the food at the prison. He alleged that he had lost 40 pounds in 3 months because the food at ICC is "unfit for human consuption [sic]." *Id.* at 26. He alleged that inmates have found food labels that state as much, and that when they showed them to Defendant Valdez, the labels "disappeared." *Id.*

**MEMORANDUM DECISION AND ORDER - 2**

## Motion to Strike

Defendants move to strike much of Plaintiff's supporting evidence as inadmissible hearsay and irrelevant. With regard to hearsay, Defendants argue that "[m]uch of Plaintiff's filings contain inadmissible hearsay, the majority of which is found in Plaintiff's own affidavit." *Motion to Strike*, 2 (Dkt. 58-1). Additionally, Defendants point to several portions of third party declarations containing inadmissible hearsay, including citations to unidentifiable inmates and a "Man on Speakerphone." *Id*.

Defendants' relevancy objections relate to Plaintiff's attempts at introducing evidence of medical treatment he received prior to being housed at ICC. Specifically, Defendants contend that "[w]hile Plaintiff's past medical condition may be relevant to highlight any change in his condition, the paragraphs Defendants cite here only serve to add to Plaintiff's narrative that he has never received appropriate medical care." *Id*. at 3. Thus, Defendants seek that the Court "strike paragraphs 13-18 of the Affidavit of Dennis A. Orr (Dkt. 47-3) in that they are irrelevant to his current care at ICC." *Id*.

Defendants also move to strike Plaintiff's inclusion of the exhibit entitled: "Dr. Agler -No Credibility." Defendants argue that because "credibility determinations are not appropriate in a motion for summary judgment, any evidence provided specifically to attack an affiant's credibility is irrelevant and improper and Defendants request that such be stricken from the record." *Motion to Strike*, 3-4 (Dkt. 58-1).

Finally, Defendants request that various affidavits of other inmates' narratives of their medical care at ICC be stricken as irrelevant. *Id*. Defendants argue that "[t]hese

**MEMORANDUM DECISION AND ORDER - 3**

affidavits have absolutely no connection with Plaintiff, Plaintiff's medical condition, or Plaintiff's medical treatment at ICC." *Id*.

Plaintiff responds by letter, seeking leave to file a sur-reply to Defendant's reply in support of summary judgment. (Dkt. 62). In sum, Plaintiff contends that Defendants are telling "one lie after another" and by moving to strike his affidavits, they are "furthering their dishonesty." *Id*. Plaintiff concludes by inferring that Defendants are withholding evidence that is favorable to Plaintiff's claims. *Id*.

A trial court can only consider admissible evidence in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988). Federal Rule of Civil Procedure 56(e) requires that any affidavit be made on personal knowledge, that the affiant be competent to testify to the matters stated therein, and that sworn or certified copies of all papers referred to in an affidavit be attached thereto. *Id*. In a summary judgment motion, documents authenticated through personal knowledge must be "attached to an affidavit that meets the requirements of Fed.R.Civ.P. 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987). "A document can be authenticated under Federal Rule of Evidence 901(b)(1) by a witness who wrote it, signed it, used it, or saw others do so." Wright & Gold, Federal Practice & Procedure: Evidence § 7106, 43 (2000).

Because of his status as pro se litigant, the court is compelled to search the record for evidence supporting his claims. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004)

**MEMORANDUM DECISION AND ORDER - 4**

("we must consider as evidence in his opposition to summary judgment all of [Plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence ..."). Such evidence need not be in admissible form, but merely susceptible to being placed in such form at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *See also Aholeli v. Hawaii Dept. of Public Safety*, 220 Fed. Appx. 670 (9th Cir. 2007).

The court has reviewed the alleged hearsay statements in question and finds Defendant's objections well-founded. The Court finds that the statements at issue constitute hearsay and do not fit within any exception to the hearsay rule. The Court further believes that Plaintiff is offering these statements for the truth of the matter asserted. Likewise, the hearsay statements submitted by Plaintiff are stricken from his affidavit, and the Court will not consider those statements in ruling on the motion for summary judgment. Further, the exhibit marked "Dr. Agler -No Credibility," and the various accounts from non-party inmates will be striken as irrelevant. The court has reviewed the statements in question and does not find any of the challenged paragraphs necessary or beneficial in resolving any of the claims before the court.

The portions of Plaintiff's affidavit relating to care he received while at ISCI , paragraphs 13–18, will be considered. As Defendants concede, Plaintiff's past medical condition may be relevant to highlight any change in his condition." The court is cognizant that Plaintiff"s claims do not encompass medical treatment he received while housed at ISCI, and will review Plaintiff's evidence with a mindful eye.

**MEMORANDUM DECISION AND ORDER - 5**

## Motion to Dismiss

Defendants argue that the facts on the record "demonstrate a lack of deliberate indifference," pointing to the fact that Plaintiff did receive treatment, even if it was not the treatment that he wanted. *Id*. at 11-14. Defendants further argue that Defendant Valdez should be dismissed because Plaintiff cannot demonstrate that Valdez personally participated in any of the decisions regarding Plaintiff's medical care. *Id*. at 15. Finally, Defendants submit that Plaintiff's claims relating to the prison food, made in his original complaint (Dkt. 3), should be dismissed as waived because Plaintiff failed to include them in his amended complaint. *Id.* at 17. In response, Plaintiff maintains that there are genuine issues of material fact preventing dismissal. *Response*, 1-4 (Dkt. 47). He argues that the affidavits in support of granting summary judgment are misleading and untrue. *Id*. at 5 In support of this contention, Plaintiff has provided the Court with a number of affidavits from prisoners claiming to have received inadequate medical care, including one from himself. *See Plaintiff's Exhibits* (Dkts. 47-1–47-6). Plaintiff claims that Defendants have refused to provide him with a complete set of medical records, which makes responding to Plaintiff's motion difficult. Nonetheless, Plaintiff has included a very detailed factual account of every dispute he has with Defendant's accounting of the underlying facts.

1. **Standard**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *See id*. at 248.

The moving party is entitled to summary judgment if that party shows that each issue of material fact is not or cannot be disputed. To show the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the materials cited do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted

**MEMORANDUM DECISION AND ORDER - 7**

in support of or opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences which can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).

Rule 56(e)(3) authorizes the Court to grant summary judgment for the moving party "if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it." The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

### A. Eighth Amendment Medical Claims

To survive summary judgment, plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To prevail on an Eighth Amendment claim regarding prison medical care, Plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). The Supreme

**MEMORANDUM DECISION AND ORDER - 8**

Court has opined that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.*

The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain; . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 838 (1994). Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Lab*, 622 F.2d 458, 460 (9th Cir. 1980). A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm. *Wood v. Housewright*, 900 F.2d 1332,

1335 (9th Cir. 1990). If the defendants are able to show that medical personnel have been "consistently responsive to [the inmate's] medical needs, and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," a plaintiff's claims may be dismissed by summary judgment prior to trial. *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004).

The Eighth Amendment does not provide a right to a specific treatment. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("[The plaintiff] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her."). A prison doctor's recommendation for a less costly treatment is not deliberate indifference unless the recommendation "was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998).

In *Estelle v. Gamble, supra,* Inmate Gamble suffered a back injury at work when a 600-pound bale of hay fell on him. Doctors and other medical providers at the prison prescribed rest and a variety of medications, including different pain relievers and muscle relaxers. Gamble argued that the medical providers were deliberately indifferent because they should have done more to diagnosis his back problem, such as x-raying his back. The Court disagreed, reasoning:

Gamble was seen by medical personnel on 17 occasions spanning a 3-month

**MEMORANDUM DECISION AND ORDER - 10**

> period: by Dr. Astone five times; by Dr. Gray twice; by Dr. Heaton three times; by an unidentified doctor and inmate nurse on the day of the injury; and by medical assistant Blunt six times. . . . The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants and pain relievers. Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued. The Court of Appeals agreed, stating: "Certainly an x-ray of (Gamble's) lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing." 516 F.2d, at 941. But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act. The Court of Appeals was in error in holding that the alleged insufficiency of the medical treatment required reversal and remand. That portion of the judgment of the District Court should have been affirmed.

429 U.S. at 97-98.


Similarly, in *Toguchi v. Chung*, *supra*, the Ninth Circuit underscored the difference between medical malpractice, which is not actionable under the United States Constitution, and deliberate indifference, which is an Eighth Amendment violation. Particularly, a plaintiff must show that the medical providers subjectively had knowledge of a serious risk to the plaintiff, and chose to disregard that risk. In *Toguchi*, Dr. Chung had treated Inmate Toguchi several times in the past before his untimely death in prison. The final time she treated him, she prescribed a course of medication that expert witnesses for the plaintiffs (Toguchi's surviving parents) opined caused a toxic level of drugs in his bloodstream, causing his death.

**MEMORANDUM DECISION AND ORDER - 11**

The Ninth Circuit, however, rejected the plaintiffs' expert witness opinions that the treating physician, Dr. Chung had been deliberately indifferent. To reach this result, the Court focused particularly on what Dr. Chung *knew* and *believed* before her allegedly wrongful acts or omissions.  In response to an argument that Dr. Chung should have considered the prescription drug Cogentin an excessive risk to the deceased inmate's health, the Court opined: "Because she did not *believe* that Cogentin use presented a serious risk of harm to Keane, her conduct cannot constitute deliberate indifference." *Id*. at 1058 (emphasis added).  Similarly, the Court noted,

> *It does not matter whether Dr. Chung's assumptions and conclusions were reasonable*. Rather, *so long as she was not subjectively aware of the risk* that Keane could be suffering from a drug overdose, and disregarded that risk, she was not deliberately indifferent. *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

*Id*. at 1060 (emphasis added).  Summary judgment for Dr. Chung was thus appropriate.

**Analysis**

It is beyond dispute that Defendant Stander treated Plaintiff a number of times during his employment with ICC as Medical Director and Lead Physician, from September 2008 thru March 2011.  Stander Affidavit, 2 (Dkt. 40-3).  During this time, Plaintiff was given a variety of exams and tests that showed arthritis in his left hand, left knee, and back.  Also during this time, medical staff prescribed Plaintiff numerous medications for pain including ultram, tramadol, baclofen, flexeril, neurontin, and skelaxin.  *Id*. at 2-3; *See also Exhibit A to Thacker Affidavit* ("*Medical Records*"), 640-653, 656, 657, 662, 664-666, 669, 670, 674-727, 772, 785-839, 862, 864-873, 888, 889

(Dkt. 41). According to Plaintiff's medical records, these medication have yielded some improvement in the Plaintiff's pain management.[1] However, the records also indicate that Plaintiff's pain may never fully resolve. *Id*. Further, Stander submits evidence that Plaintiff's "back was in this degenerated condition before he ever began to treat Plaintiff," with records showing "severe disc disease, L-5 spine" sometime in 1995. *Medical Records*, 586 (Dkt. 41).

In October 2008, Stander arranged for Plaintiff to see a neurology specialist concerning his complaints of back pain and right leg pain. *Medical Records*, 761-762 (Dkt. 41-2). He was seen by Dr. Richard W. Wilson on October 7, 2008. *Id*. In addition to the physical examination, Wilson also analyzed an MRI taken of Plaintiff's back on July 29, 2008. *Id*. Wilson noted that Plaintiff was no longer experiencing the right leg pain, but diagnosed him with "moderately severe multilevel degenerative lumbar spine disease." Wilson's proscribed course of treatment was for "conservative management." *Id*. Wilson specifically noted that Plaintiff mentioned wanting lumbar surgery, however, Wilson felt that it was "not a realistic expectation" that such an operation would help Plaintiff deal with his 15-year history of back pain. *Id*.

In May 2009, when Plaintiff complained of lower abdominal pains, Dr. Stander ordered that Plaintiff receive a consultation from Dr. Chris Kantarian, a gastrointestinal specialist. *Medical Records*, 763-768 (Dkt-41-2). As a result of the consult, a

---

[1] Ultram and tramadol are the same drug. The AARP Guide to Pills, 897 (Maryanne Hochadel, ed., 2006).

colonoscopy was advised and ultimately performed on July 15, 2009. *Id*. at 744-745. The colonoscopy revealed moderate diverticulitis, but there was no evidence of any inflammatory changes or neoplasia. *Id*. at 760. Kantarian, who performed the colonoscopy, stated that Plaintiff's abdominal pains were probably a result of pelvic floor spasms. *Id*. Kantarian prescribed muscle exercises and relaxation techniques to Plaintiff. *Id*.

On Jun 4, 2010, Stander ordered a new MRI which was performed on June 28, 2010, by Dr. Daniel Ririe at St. Luke's Regional Medical Center. *Medical Records*, 652, 623-625 (Dkt. 41). The MRI revealed degenerative disk disease, and "a small central disk bulge and tiny central disk protrusion." *Id*. at 623-625. However, it was noted that "the canal appears grossly patent at all levels," which means it was "open and unobstructed notwithstanding the bulge and protrusion." *Id*., *Stander Affidavit*, 4 (Dkt.40-3).

Stander ordered an orthopedic consult with Dr. Jared Tadje, an orthopedic specialist, on June 8, 2010. *Medical Records*, 651 (Dkt. 41). At the same time, Stander also ordered x-rays for Plaintiff's left knee and right foot. *Id*. The consult was performed on June 28, 2010. Id. at 739-42 (Dkt. 41-2). Tadje recommended a medial unloader brace for Plaintiff's left knee, a custom orthotic and gel pad for his right foot, and a back brace. *Id*. at 757.

Plaintiff received another consultation on July 9, 2010, with Dr.Christian Gussner, a specialist in physical medicine and rehabilitation. *Id*. at 749-54. This consultation was

**MEMORANDUM DECISION AND ORDER - 14**

made to specifically address Plaintiff's back pain. *Id*. Gussner recomended that Plaintiff receive steroidepidural injections to alleviate his back pain. *Id*. Gussner concluded that a surgical consult would be reasonable if those injections did not improve Plaintiff's pain management. *Id*. On August 9, 2010, Plaintiff received another consultation from Gussner to offer a second opinion regarding Plaintiff's request for lumbar surgery. Like Wilson, Gussner did not advise lumbar surgery. *Id*. at 666 (Dkt. 41-1). Instead, he again recommended that Plaintiff wait to see what effect the epidural steroid injections had on his pain management before any discussion of surgery. *Id*. at 664.

According to the record, and per Tadje's recommendations, Stander ordered a lumbar corset back brace on July 2, 2010, that Plaintiff received on July 22,2010. *Id*. at 649, 733-738. Stander also ordered epidural steroid injections as recommended by Gussner, on July19, 2010, and again October 28, 2010. *Id*. at 650. Additionally, Plaintiff received three steroid injections from Gussner on August 20, 2010, November 19, 2010, and June 17, 2011. *Id*. at 746-55. Plaintiff seemed to have some relief from pain as a result of these injections, lasting about a month each. *Id*.

With regards to Plaintiff's left knee pain, Stander ordered an x-ray of his knee on June 4, 2010, which was performed on June 7, 2010 by Dr. John Griffith. *Id*. at 652. Griffith found moderate degenerative disease with bone spurs. *Id*. at 674-75.

On September 24, 2010, Stander measured Plaintiff's knee and ordered a medial unloader knee brace from Norco. *Id*. at 648. However, due to some ordering confusion, an incorrect brace was delivered, of which Plaintiff refused delivery. *Id*. at 641, 842. Dr.

**MEMORANDUM DECISION AND ORDER - 15**

Agler ordered a refitting on January 26 and 27, 2011. *Id*. at 641-42, 729. After some difficulty locating the appropriate unloader brace, Plaintiff eventually received one on April 26, 2011. *Id*. at 856. The brace was sent for repairs on July 19, 2011. Eventually, Plaintiff received an unloader brace that he was satisfied with on August 2, 2011. *Id*. at 863. During that time, Stander and Agler ordered multiple doses of kenalog to alleviate arthritic pain in Plaintiff's fingers and knee. *Id*.

Shoe inserts were ordered for Plaintiff on June, 4, 2010. *Id*. at 652. When Plaintiff reported that the insoles did not help him, on July 2, 2010, Stander ordered special orthopedic shoes be made specifically for Plaintiff. When he received the shoes on September 3, 2010, Plaintiff was not satisfied with how the shoes fit and Stander ordered re-evaluation. *Id*. at 649. Plaintiff has requested his shoes be redone various times, finally accepting the orthotics on July 19, 2011. *Id*. at 664, 879, 863.

Plaintiff has made various specific requests for other prescriptions, most all of which have been granted. *See id*. at 645, 649-59, 670, 845. Plaintiff stated he is allergic to adalat which he said caused tachycardia; amlodipine which he said caused bradycardia; lopressor which he said caused abdominal pain; and plendil which he said caused a rash. ICC has avoided prescribing these medications. *Id*. There is no evidence to suggest that Defendants ever prescribed any less expensive medication for Plaintiff's blood pressure, keeping Plaintiff on those he has demanded. *Id*., see also Stander Affidavit, 6.

In addition to the treatment and tests Plaintiff has received for his back, knee, and feet, he has also been treated on numerous other occasions for, among other things,

**MEMORANDUM DECISION AND ORDER - 16**

kidney functioning, blood pressure, tuberculosis, cardiopulonary disease, and an enlarged heart.  Plaintiff has also been treated for hearing loss, having had his hearing repaired, and eventually replaced with two new hearing aids in October 2011.  Plaintiff has had several follow-up anointments for a variety of medical issues, including those now before the court.

Plaintiff responds to Defendant's motion arguing that they are being deceptive with the Court by not including complete records and medical files.  Plaintiff further submits that Defendants have not supplied him with complete discovery.  With regard to Defendants' statement of undisputed facts (Dkt. 41-2), Plaintiff takes issue with the completeness of quotations, arguing that Defendants are trying to deceive the court.  For his part, Plaintiff provides context and to Defendants' accounts and his perspective.  However, Plaintiff's account does not change the underlying narrative:

To prevail, Plaintiff must show that the prison official acted with a sufficiently culpable state of mind.  *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  However, deliberate indifference may be inferred "only when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment."  *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-262 (7th Cir. 1996).

Plaintiff's disagreement with Defendants' choices regarding treatment and of pain medication is simply that: a disagreement. As such, it is not actionable under § 1983. *Sanchez*, 891 F.2d at 242. Apart from his own subjective belief, plaintiff has submitted no evidence that any action or failure to act by Defendants seriously aggravated Plaintiff's condition(s). The choice of medications and treatment plan to use to treat Plaintiff's pain are a classic examples of the exercise of professional medical judgment.

No reasonable fact finder could conclude from the record presented that either defendant was deliberately indifferent to Plaintiff's serious medical needs. Defendants never stopped treating Plaintiff, and Plaintiff offers no evidence from which a fact finder could conclude that this treatment was substantially below standard medical judgment. Accordingly, Defendant's motion for summary judgment will be granted.

## ORDER

It is hereby ORDERED:

1. Defendant's Motion to Strike (Dkt. 58) is GRANTED in part and DENIED in part, as set fourth above;

2. Defendants's Motion for Summary Judgment (Dkt. 40) is GRANTED;

3. Plaintiff's Amended Complaint (Dkt. 17) is DISMISSED;

4. The case is ordered CLOSED.

DATED: **March 8, 2012**



*Honorable* Edward J. Lodge
U. S. District Judge